# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

GREGORY ALAN MERCER      )
     )    Case Nos. 1:09-CR-123
     )         1:13-CV-419
     *Petitioner,*      )
     v.      )    Judge Travis R. McDonough
     )
UNITED STATES OF AMERICA,      )    Magistrate Judge Christopher H. Steger
     )
     *Respondent.*      )

---

## MEMORANDUM OPINION

---

Petitioner Gregory Alan Mercer ("Petitioner"), a federal prisoner represented by counsel, timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). (Doc. 696.)[1] He simultaneously filed a memorandum in support of his Petition. (Doc. 697.) The government has responded (Doc. 718), and Petitioner filed a reply (Doc. 725). Petitioner asserts his trial counsel and appellate counsel were constitutionally ineffective for failing to object to or appeal, respectively, the district court's decision to vacate Petitioner's guilty plea, and the district court's decision to reject Petitioner's request to plead guilty a second time. Petitioner also asserts his appellate counsel was constitutionally ineffective for failing to appeal the district court's ruling that Petitioner's conviction for driving while impaired counted toward his criminal history score. For the reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be **DENIED**.

---

[1] All citations to the district court record are to the docket of Case No. 1:09-cr-123, which is the underlying criminal case.

# I.  STANDARDS

## A.  Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings.  *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).  In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief."  *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)).  If the motion is not summarily dismissed under Rule 4(b), Rule 8

requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

**B. Standard for Ineffective Assistance of Counsel**

Petitioner raises several issues premised upon an "ineffective assistance of counsel" argument. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff*, 734 F.3d at 606. That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure

3

of attorney performance remains simply reasonableness under prevailing professional norms."

*Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521

(2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the

second prong of the *Strickland* test—i.e., prejudice. Thus, a petitioner must show not only that

his counsel's representation was objectively unreasonable, but also that he was prejudiced by

counsel's deficiency because there exists "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *McPhearson v.

United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order

for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective

assistance claim to approach the inquiry in the same order or even to address both components of

the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on

the ground of lack of sufficient prejudice, which we expect will often be so, that course should

be followed." *Id.*

*Strickland*'s two-pronged standard also governs claims of ineffective assistance of

appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Appellate counsel has no duty to

raise every non-frivolous issue that a criminal defendant requests. *See Jones v. Barnes*, 463 U.S.

745, 754 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (observing that the "process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (quoting *Jones*, 463 U.S. at 751–52); *Engle v. Issac*, 456 U.S. 107, 134 (1982) (observing that "the Constitution guarantees criminal defendants a fair trial and a competent attorney [but] does not insure that defense counsel will recognize and raise every conceivable constitutional claim"); *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (noting that *Strickland's* performance standard does not require that counsel raise every non-frivolous issue).

"Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Consequently, it is difficult to prove that an attorney violated the performance prong by presenting one argument on appeal rather than another, *Robbins*, 528 U.S. at 289, and any petitioner attempting to do so "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Robbins*, 538 U.S. at 289).

## II.    BACKGROUND

In October 2009, the Grand Jury for the U.S. District Court for the Eastern District of Tennessee, Chattanooga Division, returned a superseding indictment against Petitioner and others. (Doc. 134.) This document named Petitioner in seven counts, charging him with:

Count One:    conspiring to manufacture, distribute, and possess with the intent to distribute 50 grams of methamphetamine and 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846;

Count Two:    conspiring to possess list chemicals for use in the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846;

5

Count Three:  attempting to manufacture methamphetamine;

Count Four:  possessing equipment, chemicals, products, and materials for use in the manufacture of methamphetamine; and

Counts 10–12: possessing pseudoephedrine for use in the manufacture of methamphetamine.

(*Id.*)

Petitioner reached a plea bargain with the government and signed a written plea agreement in November 2010.  (Doc. 558.)  In doing so, Petitioner agreed to plead guilty to Count One.  In exchange, the government agreed to move to dismiss the remaining six charges.  (*Id.* at ¶¶ 1, 2.)  By signing the agreement, Petitioner admitted that he was guilty of the offense, that he had knowingly joined and participated in the conspiracy and that his role involved between one-half and one and a half kilograms of methamphetamine.  (*Id.* at ¶ 4(b).)  He also admitted that he was "personally directly or indirectly responsible for the production and distribution of fifty grams or more of actual methamphetamine and five hundred grams or more of a mixture and substance containing a detectable amount of methamphetamine."  (*Id.* at ¶ 4(h).)

In accordance with these promises and admissions, Petitioner appeared before a magistrate judge and pleaded guilty to Count One of the superseding indictment.  During the plea colloquy, Petitioner said he had reviewed the written plea agreement and had gone "completely through" the factual basis.  (Doc. 613.)  Initially, Petitioner demonstrated some disagreement with the factual basis in the Plea Agreement providing that he had "distributed" methamphetamine:

The Court:  Is there anything in the written factual basis in your plea agreement that you contend is in any way false or misleading?

Defendant:  Well, that—yes and no.  I've had a problem with the <u>distributing</u> part, because I was an end-user of methamphetamine.  But [defense counsel] had said that if I shared my dope with somebody,

that then I was distributing.  But I—We've had a kind of
back-and-forth on that, but I do understand it.

(*Id.* at 17 (emphasis added).)  The Court then had a discussion with the Assistant United States

Attorney ("AUSA") assigned to the case about the information in the factual basis to support the

government's contention that Petitioner was involved in a conspiracy to distribute

methamphetamine.  (*Id.* at 17–19.)  Subsequently, the Court then referred Petitioner to Paragraph

4(h) of the Plea Agreement:

Court:          Paragraph (h), Mr. Mercer, says that you admit that you were
                personally directly or indirectly responsible for the production and
                distribution of 50 grams or more of actual methamphetamine and
                500 grams or more of a mixture and substance containing a
                detectable amount of methamphetamine.

                                    *          *          *

                You are the—I don't want to take your plea of guilty if you don't
                believe that you are guilty or if you did not do the acts that satisfy
                the elements of the offense.  So I have to ask you a number of
                questions here.  Now, the facts in the factual basis appear to
                support your guilty plea; and when I asked you if you agreed that
                that was, you said yes.  But then when I asked you if there was
                anything in there that you contend was false, you indicated that
                you weren't involved in distribution.  So I need to
                understand what—

Defendant:      Right.  That's—I don't know how to explain that.  I wasn't on a
                playground selling it to kids.  I wasn't doing anything like that
                with the stuff.  I was the end-user.  But yet this is going to follow
                me the rest of my life, and it's going to say that I distributed
                methamphetamine like I was a drug dealer.  I don't have a problem
                claiming what I did with that part of it.

                                    *          *          *

                I mean, I see this is going to be a problem with it, is because this—
                this is going to follow me the rest of my life, like I said, and it says
                that I distributed drugs.  Yes, I smoked methamphetamine with
                other people on the indictment.  But as far as actually transactions
                for money, no.

7

(*Id.* at 18–20.)

The Court then explained that the factual basis referred to Petitioner's involvement in a transaction for supplies, rather than money, to make methamphetamine and that the factual basis "clearly says you distributed methamphetamine, as part of this conspiracy, to at least several persons. And I need to know whether you agree that's true." (*Id.* at 21.)

After discussing the meaning of distribution off the record with his attorney, Petitioner admitted he had distributed methamphetamine, explaining that he had "misunderstood. I thought that distributing is—I took that word the wrong way. The distributing was—[defense counsel] just cleared that up for me. So, yes, I did what [the factual basis] said I did." (*Id*. at 21–22.) As a result of this correction as to the meaning of distribution, the magistrate judge concluded that Petitioner agreed with the factual basis, which provided adequate support for his guilty plea. (*Id.* at 22–26.) The magistrate judge recommended the district court accept Petitioner's guilty plea. (Doc. 559.) The district court adopted that report and accepted Petitioner's guilty plea to Count One, finding him guilty. (Doc. 560, at 1.) However, the district court deferred whether to accept the plea agreement until sentencing. (*Id*. at 2.)

At the outset of the sentencing hearing on March 31, 2011, the district court formally accepted Petitioner's plea agreement. (Doc. 614, at 2.) Defense counsel Mitchell Bryant objected to the probation office's criminal history category. Specifically, counsel objected to the application of one criminal history point for Petitioner's conviction for adult driving-while-intoxicated. (*Id*. at 5.) The district court overruled the objection and determined that the presentence report accurately calculated the guidelines range. (*Id.* at 2, 4–22, 25.) Subsequently at the sentencing hearing, Petitioner was given the opportunity to address the district court, and,

8

once again, he indicated his disagreement with charges for distribution and the amount of methamphetamine involved:

> I guess that's really my only complaint about my case. I should have said something earlier. I don't agree with the half pound, one and a half pounds of methamphetamine. It said I distributed methamphetamine. I was not a distributor of methamphetamine. I used methamphetamine. [Magistrate Judge] Susan Lee said, down here at the courthouse when I first came in, that distributing methamphetamine is people getting together using methamphetamine . . . . I don't, you know, know really what else to say, other than I feel I was really treated unfair through all this. And the reason I've agreed through all this stuff is just so I can get down here and get through the system . . . . Here I am a drug addict that needs some help and I'm being prosecuted at a cartel level . . . . You know, I think that in the future [the AUSA] back here, maybe he should try to help people instead of just destroying their lives. If he's going to—I'm fixing to go sit in jail for ten years. I think he's out of line, that—the way this was handled and the way it was done.

(*Id.* at 31–32.) The district court then addressed both the AUSA and defense counsel:

> Mr. Mercer said two things that I think I need to have you address . . . . He indicated that he does not agree with the quantity—and I took that to mean that he did not agree with the quantity that he's attributed to—and also he disagrees that he was ever involved in any distribution.

(*Id.* at 33.) Petitioner responded to the court,

> I was allowed to get an investigator at 17 months into my detaining. My investigator was not allowed to finish investigating my case. [Defense counsel] can tell you this. He came to the—he came to Silverdale two weeks after I had my investigator which was working through some stuff which would have shown substantial difference of methamphetamine count, that Mr. Bryant came to me and handed me a plea and said I had to sign it or I would have to go to trial down here. And I'm just—Like I said, I was just trying to get down here and get through the system, and that's the only choice I was given. I was involved with the use of methamphetamine. I did break the law to an extent. But I don't believe that I broke the law to the extent that the government says I did . . . . My parents, Dr. Gray over here, put a lot of work into going through the notes that were said about me. They took them apart and put them on spread sheets. And out of all the people in it, there's probably three people that said I distributed methamphetamine, and those were lies.

(*Id.* at 33–34 (emphasis added).)

Case 1:09-cr-00123-TRM-SKL   Document 830   Filed 03/31/17   Page 9 of 25   PageID #: 3178

Following this statement, considerable discussion ensued among the district court, the government, and defense counsel concerning whether Petitioner was actually admitting guilt. (*Id.* at 35–38.) The district court addressed Petitioner saying, "I'm going to speak directly to you here for a few minutes, and I want you to listen very, very carefully to what I say, because this is very important . . . . [I]t's very important that you listen very, very carefully to what I say." (*Id.* at 38–39.) The district court briefly explained the adversarial criminal justice system to Petitioner, and advised,

> [n]ow, a person can short-circuit that process by entering a guilty plea. And when a person comes before the Court, enters a guilty plea, we put them under oath, and they tell the Court that, in effect, "I am guilty of this particular crime." We rely upon the person when they say that. And then we set the matter for sentencing.

(*Id.* at 39.) The district court reviewed the legal definitions of distribution, possession, and conspiracy with Petitioner and concluded, "I am not convinced, based upon what you have told me, that you believe in your heart of hearts that you really committed this offense." (*Id.* at 41–42.)

The district court asked whether Petitioner had any questions and offered him another opportunity to attempt to persuade the court that his guilty plea should, in fact, stand. (*Id.* at 43–44.) The district court cautioned Petitioner,

> unless I have some assurance right now, I'm not going to go forward with the sentencing of [the defendant]. I need to have some assurance that [the defendant] in fact in his heart believes that he did conspire with others to manufacture, distribute, and possess with the intent to distribute these drugs in the quantity alleged.

(*Id.* at 44.) Petitioner responded,

> I'm not trying to be disrespectful to anybody. I've just never been in a situation like this. But what I'm trying to say is, I'm not denying the fact that I was involved in methamphetamine. I'm not denying the fact that I was involved in manufacturing methamphetamine. I'm not denying that I was involved with the use of methamphetamine. <u>What I am denying is the fact of the 500 grams</u>

10

<u>discrepancy</u>, where every one of my—everyone on [sic] mine [his co-defendants] had these (b)(1)(B) charges and were sentenced to a 5-to-40 plea.

(*Id*. at 45 (emphasis added).)  At this point, the district court *sua sponte* determined that he must reject the guilty plea because if he did not, the appellate court "would reverse the case.  They would send it back."  (*Id*. at 46.)  The district court explained:

> Mr. Mercer, I am going to reject your guilty plea, and I am going to go ahead and set the matter for trial.  And as I said, regardless of what the outcome is—Perhaps you'll be found not guilty.  And that will be tremendous for you if that happens.  Perhaps you'll be found guilty.  I have no way of knowing that.  I have no control over that, no interest in that.  But I think you will be in a better position morally accepting what happens if that responsibility is on someone else other than you.

(*Id*. at 47.)

On the morning of the first day of trial, Petitioner attempted to plead guilty to Count One with a plea agreement.  (Doc. 622, at 3.)  The district court refused to accept the guilty plea.  The court reasoned that Petitioner had stated under oath to the magistrate judge that he was guilty of the charges to which he was pleading; however, at the sentencing hearing Petitioner had denied he had distributed methamphetamine and had disputed the amounts of methamphetamine with which he was charged.  The district court observed that Petitioner "went further than just having some confusion about the charge.  He was very passionate, very forceful, and very direct in saying that he had not conspired with anybody."  (*Id*. at 11.)  The district court continued,

> [t]he Court has to be able to trust what the defendant tells the Court.  And at this point the Court has no basis for being able to trust the defendant's statements.  So if the Court cannot trust him when he says something to me under oath, that means the Court would be unable to make a finding that he knowingly and voluntarily had entered a guilty plea and waived his constitutional right to a trial.

(*Id*. at 16.)  Consequently, the district court declined to allow Petitioner to plead guilty and set the case for trial.  Petitioner proceeded to trial on May 23 and 24, 2011, on Counts One through

11

Four of the superseding indictment.[2]  The jury found Petitioner guilty on Counts One and Two and acquitted Petitioner on Counts Three and Four.  (Doc. 611.)

The amended, post-trial presentence report ("PSR") submitted that Petitioner was responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine.  (PSR ¶ 34.) This drug quantity resulted in a suggested base offense level of 32.  (PSR ¶ 40.)  Although the original presentence report recommended a reduction for acceptance of responsibility, the amended presentence report did not make a recommendation for such a reduction because "defendant went to trial in this case denying certain facts that led to his conviction in this case." (PSR ¶¶ 37, 46.)  As a result, the probation office's recommended total offense level was also 32. (PSR ¶ 49.)

The probation office assessed Petitioner one point for an impaired driving offense and one point for an assault offense.  (PSR ¶¶ 52, 53.)  The two points resulted in a recommended criminal history category of II.  (PSR ¶ 54.)  A total offense level 32 and criminal history category II resulted in a recommended advisory guidelines range of 135 to 168 months.  (PSR ¶ 76.)  The probation office noted that the statutory minimum for the case was ten years.  (PSR ¶ 74.)  Petitioner objected to the criminal history scoring and the lack of reduction for acceptance of responsibility.  (Doc. 581.)

The district court held a sentencing hearing in August 2011.  The district court overruled Petitioner's objections to the PSR (Doc. 631, at 17, 19), and sentenced Petitioner to serve 160 months of imprisonment as to Count One and 120 months of imprisonment as to Count Two, with the sentences to run concurrently for a total effective sentence of 160 months (Doc. 629).

---

[2] Before trial commenced, the government moved to dismiss Counts Ten through Twelve of the superseding indictment, and the district court granted the motion, dismissing those charges. (Doc. 622, at 18.)  Four counts of the superseding indictment went to the jury.

12

Following his sentencing, the Petitioner appealed the district court's refusal to credit him for acceptance of responsibility. *United States v. Wiggins*, 501 F. App'x 408, 414 (6th Cir. 2012). The Sixth Circuit affirmed the district court's sentence, holding, "[Petitioner's] conduct did not clearly demonstrate his acceptance of responsibility for conspiring to manufacture and distribute methamphetamine," in that "[Petitioner] made several statements that were inconsistent with his initial guilty plea." *Id*. at 415. Petitioner petitioned for *certiorari*, which the Supreme Court denied on February 19, 2013. (Docs. 664, 669.) He timely filed this 2255 Motion on December 20, 2013.

On December 15, 2016, Petitioner's sentence was reduced from 160 months' imprisonment to 129 months' imprisonment pursuant to 18 U.S.C. § 3582(c)(2). (Doc. 810.) His current release date is November 7, 2018.

## III. DISCUSSION

### A. Trial Counsel's Failure to Object to and Appellate Counsel's Failure to Appeal the District Court's Decision to Vacate the Guilty Plea and Refusal to Allow Petitioner to "Attempt to Re-Plead Guilty"

Petitioner accurately states that the district court did not simply reject his guilty plea to Count One of the superseding indictment; rather, the District Court accepted the guilty plea, then vacated it, and subsequently rejected Petitioner's later attempt to plead guilty to the same count thereby forcing Petitioner to trial. Petitioner asserts his trial counsel and appellate counsel rendered ineffective assistance by failing to object to or appeal (1) the district court's decision to vacate *sua sponte* Petitioner's guilty plea and (2) the district court's refusal to "permit Mr. Mercer to attempt to re-plead guilty." (Doc. 697, at 19.)

*1. District Court's Decision to Vacate the Guilty Plea*

Petitioner argues that, when he affirmatively disavowed distributing methamphetamine, an element of the crime for which he had pleaded guilty, the district court's only recourse, since it had already accepted the guilty plea, was to reject the plea agreement and follow the procedures set forth in Federal Rule of Criminal Procedure 11(c)(5). Rule 11(c)(5) provides:

> (5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
>
> > (A) inform the parties that the court rejects the plea agreement;
> >
> > (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
> >
> > (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Petitioner's plea agreement contained a provision of the type specified in Rule 11(c)(1)(A), *to wit*, the government agreed to dismiss all remaining counts of the indictment if Petitioner pleaded guilty to Count One. (Doc. 558, at 1.) Therefore, Petitioner asserts, the Court should have, pursuant to Rule 11(c)(5)(B) and (C), given the Petitioner the opportunity to withdraw his guilty plea or at least the opportunity to "attempt" to re-plead to the indictment with the understanding that the district court may dispose of the case less favorably than the plea agreement contemplated. Instead, Petitioner contends, the district court erred by vacating the plea and refusing to allow the Petitioner to re-plead guilty. As a result, Petitioner asserts, he did not receive a reduction in his sentence for acceptance of responsibility.

In support of his argument, Petitioner relies on *In re Ellis*, 356 F.3d 1198, 1200 (9th Cir. 2004) (en banc), wherein the court stated,

> [w]e write en banc to clarify that the acceptance of a criminal defendant's guilty plea is a judicial act distinct from the acceptance of the plea agreement itself. Once the district court accepts a guilty plea, the conditions under which the plea may be withdrawn are governed exclusively by Rule 11 of the Federal Rules of Criminal Procedure.

In *Ellis*, the defendant, originally charged with first degree murder, was subsequently charged in a superseding information with second degree murder. Ellis waived indictment by grand jury. During a hearing, the district court accepted Ellis's guilty plea to the second degree murder charge but reserved a decision concerning the plea agreement until he had seen the presentence investigation report. Under the plea agreement, the government agreed not to prosecute Ellis for any additional offenses known to it—i.e., the first degree murder charge. The plea agreement also provided that Ellis could not withdraw his guilty plea to the second degree murder charge unless the sentence was "other than" 132 months' imprisonment. At the sentencing hearing, the district court rejected the plea agreement as being too lenient and immediately reinstated the indictment charging Ellis with first degree murder, arraigning him on that charge. While Ellis sought to persist in his guilty plea as to the second degree murder charge in lieu of the first degree murder charge, the district court asserted it had not accepted the guilty plea to the lesser charge.

Before Ellis could be tried on the first degree murder charge, he filed a writ of mandamus which the government did not oppose. The Ninth Circuit found that the district court had, in fact, accepted the guilty plea to the lesser charge, and, when the court rejected the plea agreement, "a number of options became available," but the option of "requiring Ellis to plead to higher charges—was not one of them." *Id.* at 1203.

> When his plea agreement was rejected, it became Ellis's choice whether to: (i) stand by his plea and face a sentence at the highest end of the applicable guidelines range (151 months) or an upward departure to as much as a life term; (ii) withdraw his plea and attempt to renegotiate a new plea agreement without a

15

stipulated sentence ceiling; or (iii) withdraw his plea and take his chances at trial on the first degree murder charge. Nowhere does Rule 11 provide that the district court may dictate this choice.

*Id.* at 1208 (internal footnote omitted). The *Ellis* court also found that "when the district court made the further decision that the second degree murder charge itself was too lenient, it intruded into the charging decision, a function 'generally within the prosecutor's exclusive domain.'" *Id.* at 1209 (quoting *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983)). In granting mandamus relief, the *Ellis* court concluded, "[b]y requiring the reinstatement of the first degree murder charge, the district court overstepped its judicial bounds . . . . The district court clearly erred in vacating Ellis' plea." *Ellis,* 356 F.3d at 1210.

*Ellis* is inapposite to Petitioner's case for two reasons. First, when the district court vacated Petitioner's guilty plea, it did not intrude into the charging decision by reinstating charges from a prior indictment. Petitioner continued to face the same charges under the same superseding indictment which had been the subject of the guilty plea. Second, the district court did not vacate Petitioner's guilty plea because he found the *plea agreement* to be inappropriate. He vacated the guilty plea because he found the *plea itself* to be inappropriate. Petitioner denied distributing methamphetamine. For that reason, the guilty plea lacked a sufficient factual basis to support all elements of the crime to which Petitioner had pleaded guilty. Petitioner pleaded guilty to conspiring to manufacture, distribute, and possess with the intent to distribute fifty grams of methamphetamine and 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. However, during allocution at sentencing, Petitioner denied distributing methamphetamine, an essential element of the crime.

As the Sixth Circuit explained in *United States v. Mobley*, 618 F.3d 539, 545 (6th Cir. 2010), a district court has an obligation pursuant Federal Rule of Criminal Procedure 11(b)(3) to

16

continue to ensure that a guilty plea is supported by a sufficient factual basis until a judgment is

entered:

> [c]ritically, Fed. R. Crim. P. 11(b)(3) states that a district court should make the
> factual basis determination "[b]efore *entering judgment* on a guilty plea"—not, as
> in other subsections of Rule 11, "before *accepting* a plea." In reviewing whether
> a district court had a factual basis for a plea, then, we "may examine the entire
> record, including proceedings that occurred *after* the plea colloquy."

(quoting *United States v. McCreary-Redd*, 475 F.3d 718, 722 n.1 (6th Cir. 2007)); *see also*

*Spiridigliozzi v. United States*, 117 F. App'x 385, 390 (6th Cir. 2004) (noting that Rule 11(b)(3)

instructs district courts that it must determine there is a factual basis for a plea before entering

judgment); *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (noting that the district

court's obligations under Rule 11 to determine a guilty plea is supported by a sufficient factual

basis continue until it has entered judgment); *United States v. Brown*, No. 11-174, 2012 WL

3144328, at *3 (S.D.N.Y. Aug. 2, 2012) ("Rule 11(b)(3) imposes obligations on the court which

persist until the court enters judgment. The obligation continues until judgment even if the

district court accepts a guilty plea at a change of plea hearing.") (internal citations omitted).

If the district court, before entry of judgment but after acceptance of a guilty plea,

determines that the guilty plea is not supported by an adequate factual basis, then the appropriate

remedy is to vacate the plea. *Smith*, 160 F.3d at 121 ("If [the district court] decides there was no

factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea

of not guilty on behalf of the defendant.");[3] *see also United States v. Mastrapa,* 509 F.3d 652,

---

[3] The *Smith* court cites Rule 11(f). In *Spiridigliozzi*, 117 F. App'x at 390 n.2, the court provides
a helpful history of Rule 11(f), the substance of which is currently found in Rule 11(b)(3):

> Rule 11 was amended most recently on December 1, 2002, at which time the
> subparts of the rule were "reorganized as part of the general restyling of the
> Criminal Rules." Advisory Committee Notes, 2002 Amendments. Pursuant to
> this reorganization, Rule 11(f) was recast as Rule 11(b)(3), while Rule 11(c) was

559–661 (4th Cir. 2007) (holding that where defendant at sentencing hearing denied knowledge of distribution of methamphetamine, factual basis for previously accepted guilty plea was lacking and district court erred in failing to vacate guilty plea; case was remanded for new Rule 11 proceeding); *United States v. Ventura-Cruel,* 356 F.3d 55, 61 (1st Cir. 2003) (holding that after defendant stated during a sentencing hearing that he did not know his conduct constituted part of a drug conspiracy, the district court properly vacated guilty plea and entered a plea of not guilty because guilty plea lacked factual basis); *United States v. Gilbert*, No. 10-CR-20505, 2011 WL 652830, at *6 (E.D. Mich. Feb. 14, 2011) (vacating previously accepted guilty plea for lack of adequate factual basis and entering not guilty plea for defendants). The Advisory Committee Notes to Rule 11 also anticipate occasions in which a district court will need to vacate a guilty plea: "The normal consequence of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty." Fed. R. Crim. P. 11 advisory committee's note. Finally, notwithstanding its decision in *Ellis*, the Ninth Circuit also recognizes that Rule 11(b)(3) "implies that acceptance of a guilty plea does not foreclose a subsequent rejection of the plea if factual questions emerge, for instance at sentencing." *United States v. Partida-Parra*, 859 F.2d 629, 631 (9th Cir. 1988).[4]

 The district court in the instant case did not vacate the guilty plea because it rejected the plea agreement. The district court vacated Petitioner's guilty plea and entered a plea of not

---

recast as Rule 11(b)(1). Before the 2002 amendment, Rule 11(f) stated: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Case law discussing Rule 11 prior to its 2002 amendment remains apposite: the 2002 changes were generally "intended to be stylistic only." Advisory Committee Notes to 2002 Amendments.

[4] The *Partida-Parra* court cites Rule 11(f) which later became Rule 11(b)(3). *See supra*, text accompanying note 3.

18

guilty when it concluded, *inter alia,* pursuant to its continuing duty under Rule 11(b)(3), that Petitioner's previously entered guilty plea for conspiracy to manufacture and distribute methamphetamine lacked a sufficient factual basis because Petitioner denied he had distributed methamphetamine. The district court acted appropriately in doing so. In fact, had the district court failed to vacate the guilty plea at that point, it would have committed reversible error. *See e.g., United States v. Culbertson*, 670 F.3d 183, 190–91 (2d Cir. 2012) (holding that, where defendant denied an essential element of the charged crime, it was reversible error for the court to find a sufficient factual basis for the charge and to accept the guilty plea); *see also United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (holding the "harmless error analysis does not apply to appellate review of the sufficiency of the factual basis supporting the guilty plea" and "the need to have some factual basis will continue to be a rule subject to no exceptions") (quoting *United States v. Fountain*, 777 F.2d 351, 357 (7th Cir. 1985)).

### 2. District Court's Decision to Reject Petitioner's Guilty Plea a Second Time

After the district court correctly vacated the guilty plea, Petitioner attempted to plead guilty again, but the district court refused to allow the Petitioner to plead guilty. There is no constitutional right to plead guilty. *North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970). The decision whether to accept or reject a tendered plea of guilty is committed to the sound discretion of the district court. *Santobello v. New York*, 404 U.S. 257, 262 (1971) (citing *Lynch v. Overholser*, 369 U.S. 705, 719 (1962)); *United States v. Yates*, 698 F.2d 828, 829–30 (6th Cir.1983). However, failure to articulate a "sound reason for rejecting the plea" constitutes an abuse of discretion. *United States v. Moore*, 916 F.2d 1131, 1135–36 (6th Cir. 1990) (citing *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir. 1982)).

19

In the instant case, the district court, immediately before commencement of trial, articulated its reasons for not allowing Petitioner to plead guilty a second time. The court explained that it could not trust the Petitioner's present admission that he was guilty of conspiring to manufacture and distribute methamphetamine because he had once before recanted his prior admission made under oath. The court further stated that without Petitioner's sincere admission under oath, the court did not believe Petitioner would accept responsibility for his crime and approach his incarceration pursuant to the plea agreement in a frame of mind conducive to his rehabilitation. The court concluded, "I think you will be in a better position morally accepting what happens if that responsibility is on someone else [i.e., the jury] other than you."

Insistence of innocence or denial of an element of the crime charged is a reasonable basis to reject a guilty plea. *See e.g.*, *United States v. White,* 308 F. App'x 910, 916 (6th Cir. 2009) (holding that rejection of guilty plea was proper where defendant stated that he was not guilty of the crime for which he had been charged and defendant stated, erroneously, that he was pleading to a "lesser charge"); *United States v. Oh*, 200 F. App'x 545, 555 (6th Cir. 2006) (holding that rejection of guilty pleas to four fraud counts was appropriate where the defendant denied intent to defraud). The district court did not abuse its discretion when it declined to accept Petitioner's guilty plea a second time.

Accordingly, because the district court did not err in vacating Petitioner's guilty plea and in refusing to accept Petitioner's guilty plea a second time, Petitioner has suffered no prejudice by his trial counsel's failure to object to either action or his appellate counsel's failure to raise either issue on direct appeal. Petitioner's claim for ineffective assistance of counsel lacks merit.

**B. Appellate Counsel's Decision Not to Appeal the District Court's Ruling That Petitioner's Conviction for Driving While Impaired Counted Toward Petitioner's Criminal History Score**

The district court calculated Petitioner's sentence using the 2011 U.S. Sentencing Guidelines Manual. The probation office assessed Petitioner two criminal history points, one of which was for a prior conviction for Adult Driving While Impaired. Because Petitioner was assessed two criminal history points, he was not eligible for the "safety valve" which would have resulted in a shorter sentence. *See* 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2.

Mr. Mercer pleaded guilty to the charge of Adult Driving While Impaired (DWI) in violation of Tenn. Code Ann. § 55-10-418 after he struck a utility pole with his vehicle, was taken to a hospital, and was determined to have a blood alcohol level of .19. (PSR ¶ 52.) The date of the offense was April 3, 2002. (*Id.*) At that time, Tenn. Code Ann. § 55-10-418 (repealed effective July 1, 2003) made it a crime for anyone twenty-one years or older to drive if his ability to drive safely was impaired due to the consumption of alcohol, drugs, or other intoxicants. It also created a presumption that a person with a blood alcohol level between .08 and 1.0 was impaired.[5] The court imposed a mandatory $500 fine, which, it is undisputed, was the only punishment possible for that crime. The probation office reported that it had assessed the extra criminal history point for DWI pursuant to U.S. Sentencing Guidelines Manual § 4A1.2(c) and Application note 5. (PSR ¶ 52.)

Section 4A1.2(c) guides a court at sentencing in determining which prior convictions are to be applied to a defendant's criminal history score. Under Section 4A1.2(c), all felonies are

---

[5] Currently, Tenn. Code Ann. § 55-10-401 states it is unlawful for any person to drive with a blood alcohol level of .08% or more. Presumably, in 2002 at the time of Petitioner's DWI offense, Tennessee had another statute which made it a more serious crime than the crime of DWI to drive with a blood alcohol level of more than 1.0, but neither party addresses this matter in its 2255 Motion briefing. In any event, it is not material to the current issues before the Court.

counted in the calculation of a defendant's criminal history score, some misdemeanors are counted, and no minor crimes are counted. *See* § 4A1.2(c). Section 4A1.2(c) (2011) provides in relevant part,

> Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted except as follows:
>
> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if . . . (B) the prior offense was similar to an instant offense:
>
>> Careless or reckless driving . . . .
>
> (2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
>
>> . . . Minor traffic infractions (e.g., speeding) . . . .

The 2011 version of Application note 5 provided, "Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of Section 4A1.2(c)." U.S. Sentencing Guidelines Manual § 4A1.2(c) cmt. n.5 (U.S. Sentencing Comm'n 2011).

Thus, if the DWI offense was similar to reckless driving, it could properly be applied to Petitioner's criminal history score pursuant to § 4A1.2(c)(1). However, if the DWI conviction was more akin to a minor traffic violation, then, pursuant to Section 4A1.2(c)(2), it could not be applied to Petitioner's criminal history score. At sentencing, Petitioner argued that his conviction for DWI was similar to a minor traffic violation, not reckless driving. Relying on Application note 5 to Section 4A1.2(c), the district court rejected this argument, finding instead that the offense of DWI was more similar to reckless driving than to a minor traffic offense and therefore should be counted toward Petitioner's criminal history score.

Petitioner asserts his appellate counsel rendered ineffective assistance when he failed to raise this issue on direct appeal. In support of this argument, Petitioner cites *United States v. Potes-Castillo*, 638 F.3d 106 (2d Cir. 2011). In *Potes-Castillo*, the court concluded that a conviction under New York law for "driving while ability impaired" could possibly be more similar to a minor traffic violation than to reckless driving and remanded the case to the district court for further consideration. 638 F.3d at 114. In a thorough discussion of the history of Section 4A1.2(c) and Application note 5, the district court in *St. Hill v. United States,* No. 1:12-cr-178, 2017 WL 1011423, at * 5 (D. Me. Mar. 3, 2017), noted that the Second Circuit's decision in *Potes-Castillo*

> caused a circuit split as a number of other circuits had interpreted Application Note 5 to mean that driving while ability impaired convictions are always counted. *See United States v. Pando,* 545 F.3d 682, 683–85 (8th Cir. 2008); *United States v. Thornton,* 444 F.3d 1163, 1165–67 (9th Cir. 2006); *United States v. LeBlanc*, 45 F.3d 192, 195 (7th Cir. 1995); *United States v. Deigert*, 916 F.2d 916, 918 (4th Cir. 1990).

At the time that Petitioner filed his direct appeal in the instant case, the Sixth Circuit had not addressed the applicability of a DWI offense to a defendant's criminal history score pursuant to Section 4A1.2(c). However, in 2012, the Sentencing Commission amended Application note 5 such that it currently reads:

> <u>Sentences for Driving While Intoxicated or Under the Influence</u>.—Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified. Paragraphs (1) and (2) of §4A1.2(c) do not apply.

U.S. Sentencing Guidelines Manual § 4A1.2(c) cmt. n.5.

In discussing the 2012 amendment, the Sentencing Commission noted the split among the circuits in interpreting the earlier version of Application Note 5 as it applied to misdemeanor offenses of driving while impaired and indicated the 2012 amendment was intended to resolve

23

the split among the circuits.  U.S. Sentencing Comm'n, Amendments to the Sentencing

Guidelines, Policy Statements, and Official Commentary at 17–18 (Apr. 30, 2012) (2012

Guidelines Amendments).  The Sentencing Commission explained that the purpose of the

amendment was "to clarify that convictions for driving while intoxicated and similar offenses are

always counted, without regard to how the offenses are classified."  *Id.*  The Commission

concluded:

> This amendment reflects the Commission's view that convictions for driving
> while intoxicated and other similar offenses are sufficiently serious to always
> count toward a defendant's criminal history score.  The amendment clarifies the
> Commission's intent and should result in more consistent calculation of criminal
> history scores among the circuits.

*Id.*

In the Sixth Circuit, clarifying amendments to the Guidelines may be applied

retroactively to discern the Sentencing Commission's intent with regard to a pre-amendment

guideline.  *United States v. Geerken,* 506 F.3d 461, 465 (6th Cir. 2007); *United States v. Luster,*

889 F.2d 1523, 1529 (6th Cir. 1989) ("Inasmuch as the amendment to the guideline is intended

to clarify the existing guideline, it should be given substantial weight in determining the meaning

of the existing guideline.")  "'An amendment is clarifying if it changes nothing concerning the

legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to

have already meant.'"  *Huff v. United States*, 734 F.3d 600, 608 (6th Cir. 2013) (quoting

*Geerken*, 506 F.3d at 465).  On the other hand, an amendment which would increase the

Guideline range applicable to a defendant, if applied retroactively, would violate the *Ex Post*

*Facto* Clause.  *Huff*, 734 F.3d at 608–09.  To determine whether an amendment is substantive or

clarifying, the court considers three factors:  (1) whether the Sentencing Commission deemed the

amendment to be substantive or clarifying, (2) whether the language of the guideline itself or just

the language of guideline commentary is amended, and (3) whether the amendment settles an ambiguity in the language of a guideline.  *Id.* at 609.

In the instant case, all three factors militate toward finding that the 2012 amendment to Application note 5 was clarifying rather than substantive.  First, the Sentencing Commission expressly said the purpose of the amendment was to clarify that driving-while-impaired type offenses should always count toward a defendant's criminal history score.  Second, only the language of Application note 5 was amended, not the language of § 4A1.2(c) itself.  Third, the amendment resolved any ambiguity in the guideline and Application note 5.  Therefore, the Court concludes, based on the 2012 Amendment to Application note 5, that Petitioner's conviction for DWI was properly counted toward his criminal history score, and he was, therefore, properly deemed ineligible for the safety valve.  Accordingly, Petitioner was not prejudiced by his appellate counsel's failure to raise this issue on direct appeal.

## IV.    CONCLUSION

The Court has reviewed this 2255 Motion carefully and finds no merit in Petitioner's claims.   For the reasons stated herein, the Court finds no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is necessary.  The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief.  The 2255 Motion (Doc. 696) is therefore **DENIED**.

**AN APPROPRIATE ORDER WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**